DENVER MIDWEST MOTOR FREIGHT, INC., APPELLANT, v. BUSBOOM TRUCKING, INC., APPELLEE.

207 N. W. 2d 368

Filed May 11, 1973. No. 38745.

Bernard L. Packett, for appellant.

Knudsen, Berkheimer, Endacott & Beam, Kenneth L. Noha, Crosby, Pansing, Guenzel & Binning, and Theodore L. Kessner, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

McCOWN, J.

This is an action against the lessor of a truck tractor to obtain indemnification for amounts paid by the motor carrier lessee for damages to cargo and other property

resulting from an accident. The District Court sustained a demurrer to the amended petition and dismissed the action.

On February 7, 1971, the plaintiff, Denver Midwest Motor Freight, Inc., and the defendant, Busboom Trucking, Inc., entered into a lease agreement in which the plaintiff leased a truck tractor from the defendant. It was to be used for a one-way shipment of a printing press from Omaha to Denver. The lease provided that the lessor "shall surrender full control, possession and management of said equipment to the Lessee during the term of this lease * * * and the (Lessor further agrees to operate said equipment as directed by Lessee) and the Lessor shall furnish the driver, and shall pay the driver for his services * * *. Provided, however, that during the time this lease shall be in force * * * such driver shall be subject to the control and supervision of the Lessee." The lease also provided that the lessor would maintain the equipment and furnish and pay all expenses incident to its operation. The critical provision of the trip lease agreement around which this litigation centers provided: "The Lessor agrees to reimburse the Lessee for any payment made on account of any accident, claim, or suit arising out of the operation of said equipment during the term of this lease."

The leased equipment picked up the printing press on February 7, 1971, in Omaha. On February 8, 1971, the truck went off the road and the printing press was damaged in the accident. The lessee settled the claim for damage for $40,989.37 and in this action sought recovery of that amount under the indemnity provisions of the lease.

The lease agreement and the operation of the equipment here were subject to the rules and regulations of the Interstate Commerce Commission and applicable federal statutes. 49 U. S. C. A., § 304, authorized the Interstate Commerce Commission to prescribe regulations for the leasing and use of motor vehicles by authorized

motor carriers. The statute authorized "regulations requiring that any such lease, contract, or other arrangement shall be in writing and be signed by the parties thereto, shall specify the period during which it is to be in effect, and shall specify the compensation to be paid by the motor carrier * * *," and "such other regulations as may be reasonably necessary in order to assure that while motor vehicles are being so used, the motor carriers will have full direction and control of such vehicles and will be fully responsible for the operation thereof in accordance with applicable law and regulations, as if they were the owners of such vehicles, including the requirements prescribed by or under the provisions of this chapter with respect to safety of operation and equipment and inspection thereof, which requirements may include but shall not be limited to promulgation of regulations requiring liability and cargo insurance covering all such equipment."

The purpose of the ICC regulations adopted under this statutory authority was "to protect the industry from practices detrimental to the maintenance of sound transportation services * * * and to effect safety of operation for vehicles and drivers." See American Trucking Associations, Inc. v. United States, 344 U. S. 298, 73 S. Ct. 307, 97 L. Ed. 337.

The regulations as adopted required that the lease of equipment by authorized carriers must be in writing. Title 49 C. F. R., § 1057.4(a)(2). Most significantly here, the regulations required that the lease "Shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said contract, lease or other arrangement, * * *." Title 49 C. F. R., § 1057.4(a)(4).

The nonowned equipment was required to be inspected by the lessee carrier when possession was transferred to it and the lessee was also required to make certain that the driver of the leased vehicle was familiar with

the motor carrier safety regulations. Title 49 C. F. R., § 1057.4(c) and (e).

The background for the statutes and rules and regulations governing truck leasing practices by authorized carriers is set forth in American Trucking Associations, Inc. v. United States, *supra*. Prior to 1953, the effective date of the ICC regulations, interchange or trip leases were frequently oral and created difficulty in fixing the lessee's responsibility for accidents. Sanctions for the violation of ICC regulations were difficult to impose in the case of exempted equipment and commission safety requirements were commonly overlooked. "Since most of these leases extended for the period of one trip only, the leasing carriers often failed to inspect the equipment used or to extend the supervision of rest periods, doctor's certificates, brakes, lights, tires, steering equipment and loading, normally accorded its own drivers and equipment." See Alford v. Major, 470 F. 2d 132. We approach the case before us against that historical backdrop.

The lessee, who drew the lease here, contends that its indemnification clause may be properly enforced because the lesssee, consistent with ICC regulations, assumed full control, management, and supervision of the equipment and driver, and the lessor and lessee should be free to contract between themselves as to which one of them shall ultimately bear the cost of damages to a third party. The defendant lessor contends that the intent of the regulations and the statutes was to make sure that licensed carriers would be responsible in fact as well as in law for the maintenance of leased equipment and the supervision of borrowed drivers, as well as for damages to third parties. Defendant contends that the indemnity clause abrogates the regulations, contravenes public policy, and is unenforceable.

There are two lines of authority on the specific issue with which we are confronted. They are represented by two federal cases, both decided in 1972. The

two cases reach almost diametrically opposite results.

Alford v. Major, 470 F. 2d 132 (7th Cir., Nov. 1972), held that an indemnification clause in a trip lease obligating the lessor to indemnify the lessee for damage to cargo or injuries suffered by third persons as a result of negligence of the lessor or lessor's driver was unenforceable as against public policy since the clause would permit the lessee to circumvent the requirement of ICC regulations that leased carriers exert actual control over the leased equipment and the borrowed drivers. The case also determined that highway safety was one of the paramount goals of the statutes and regulations, and that strict enforcement of those regulations would assist in the prevention of accidents from interstate truck leasing operations.

Allstate Insurance Co. v. Alterman Transport Lines, Inc., 465 F. 2d 710 (5th Cir., Aug. 1972), involved a trip lease which provided not only that the equipment should be solely and exclusively under the direction and control of the lessee but also provided that the lessee "shall assume full common carrier responsibility * * * for the operation of such vehicle." The court there held that a provision for indemnity by the lessor did not abrogate the ICC regulations and did not prohibit two free contracting parties from determining as between themselves which party will ultimately bear the' cost of damages to a third party and did not prevent indemnification between trucking companies.

There are obvious factual differences between the Alford and the Allstate cases upon which they might be distinguished. An analysis of the overlapping and sometimes conflicting policy considerations convinces us that the Alford case provides the better solution.

In the case before us, the lease form was drawn by the lessee. It did not contain any provision requiring the lessee to assume full common carrier responsibility for the operation of the vehicle. It did not "specify the compensation to be paid by the lessee for the rental

of the leased equipment" as required by the ICC regulations.

The approval of indemnity provisions under the circumstances here might well adversely affect the safety of operation of vehicles and drivers as suggested in Alford. It would also inject into trip lease negotiations an added element of uncertainty and permit carriers to circumvent the clearly spelled out requirements that a lessee exert actual control over leased equipment and borrowed drivers. Varying conditions and provisions of indemnity clauses when applied to varying factual situations introduce added elements of uncertainty and tend to blur lines of responsibility to the public between lessor and lessee and increase the prospect of litigation between carriers or their insurers without any corresponding benefit to the public. Insurance coverage of carriers might be adversely affected where tort liability of others is assumed by contract if such indemnification clauses were enforceable. If indemnity clauses in these circumstances are unenforceable, uncertainty is removed, statutory and regulatory provisions are fully enforced, and public policy is best served. We therefore hold that an indemnification clause in a trip lease of operating equipment by a licensed motor carrier, subject to ICC regulations, which obligates the lessor to reimburse the lessee for any payment made on account of any accident, claim, or suit arising out of the operation of the equipment during the term of the lease is unenforceable as against public policy. Such a clause would permit the lessee to circumvent the requirements of the Interstate Commerce Commission that authorized carrier lessees to exert actual control over the leased equipment and the borrowed drivers. Alford v. Major, 470 F. 2d 132.

The judgment of the District Court was correct and is affirmed.

AFFIRMED.