**GENERAL EXPRESSWAYS, INC.,**
Plaintiff,

v.

**SCHREIBER FREIGHT LINES, INC.,**
**Defendant.**

No. 74 C 493.

United States District Court,
N. D. Illinois, E. D.

July 5, 1974.

---

Joel H. Steiner, Axelrod, Goodman, Steiner & Bazelon, Chicago, Ill., for plaintiff.

Leroy A. Garr, Brundage & Garr, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

AUSTIN, District Judge.

This is an action for recovery under an indemnification clause of a truck leasing agreement. Federal jurisdiction is predicated upon the diversity of the parties' citizenship and an amount in controversy in excess of $10,000.00. The case is presently before the court to resolve the issue presented by defendant's motion pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings.

The facts set forth in the pleadings are as follows:

Plaintiff General Expressways, Inc. ("General") and defendant Schreiber Freight Lines, Inc. ("Schreiber") are common carriers in interstate commerce. On June 27, 1973, the parties entered into a written "trip lease" agreement whereby Schreiber leased to General some tractor-trailer trucks for a particular trip General intended to make. Shortly thereafter, General gained possession of the trucks, inspected them, loaded them and embarked with the cargo. Before the cargo reached its destination and while it was being transported in the Schreiber trucks, it was damaged, causing General to become liable in the amount of $16,031.00 to the owner of the shipment. Significantly, no personal injury is involved in this case. General has paid the owner's claim.

The trip lease agreement between the parties provides, in pertinent part:

"It is understood that the leased equipment under this agreement is in the exclusive possession, control and use of the authorized carrier Lessee and that the Lessee assumes full responsibility in respect to the equipment it is operating to the public, the shippers, and the INTERSTATE COMMERCE COMMISSION. It is agreed that Lessor will carry acceptable Public Liability and Property Damage Insurance. Lessor agrees to reimburse and otherwise indemnify Lessee for any and all losses sustained by Lessee resulting from the use of the aforesaid equipment. * * * * * The lessor shall indenify the Lessee from any loss, damage or happening giving rise to claims on the part of the shippers, and the Lessee shall withhold payment of any and all sums then or thereafter due

the Lessor, to the extent of such expenses and claims until the determination of such expense and valid claims, which amounts shall then be deducted to the satisfaction thereof. Lessee shall not be liable for the loss of, or damage to, the aforesaid equipment, however caused, while in use under the terms of this lease. * * * * * Lessor hereby agrees further to maintain his equipment in a good and efficient manner, observe all safety and other requirements of the I.C.C. and all other regulatory bodies having jurisdiction and to indemnify carrier against any losses in connection with this operation."

Thus, General claims it should be indemnified by Schreiber, pursuant to the terms of the contract, for the loss it has incurred.

Schreiber, on the other hand, contends the indemnity provision is contrary to the public policy embodied in the regulations of the Interstate Commerce Commission and is therefore unenforceable.[1] Accordingly, Schreiber moves for entry of judgment on the pleadings in its favor. For the reasons that follow, that motion must be denied.

It is now established in the Fourth and Fifth Circuits that indemnification agreements similar to the one here are enforceable, despite the public policy objections raised by Schreiber. Carolina Freight Carriers Corp. v. Pitt County Transportation Co., 492 F.2d 243 (4th Cir. 1974); Allstate Insurance Co. v. Alterman Transportation Lines, Inc., 465 F.2d 710 (5th Cir. 1972). As stated in the *Allstate* case:

"Turning to the indemnification clause itself we find nothing in the language of 49 C.F.R. § 1057.4(a)(4) which would prohibit two freely contracting parties from determining, as

---

1. The pertinent regulatory section, 49 C.F.R. § 1057.4, reads:
   "(a) *Contract requirements.* The contract, lease, or other arrangement for the use of such equipment:
    *   *   *   *   *

(4) *Exclusive possession and responsibilities.* Shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said contract, lease or other arrangement."

between themselves, which party will ultimately bear the cost of damages done to a third person. The only conceivable argument against such an arrangement would be that the regulation seeks to prevent indemnification on the theory that a trucking company, knowing it does not have to pay damages, might tend to be less careful in supervising and controlling the actions of its truck drivers. However, the same can be said of insurance coverage which the regulations obviously do not prohibit. We are of the opinion that had the I.C.C. intended to prevent indemnification between trucking companies it would have said so in precise terms." *Id.* at 713.

I find this reasoning inescapable and therefore adopt it as the law of this case.

In opposition to this conclusion, defendant points to Alford v. Major, 470 F.2d 132 (7th Cir. 1972), where a conclusion contrary to that reached by the Fourth and Fifth Circuits was reached. However, the *Alford* decision was based upon different facts and therefore must be distinguished. In the first place, in *Alford,* there was a *prima facie* violation of 49 C.F.R. § 1057.4(a)(4) in that the lessee allowed the lessor to retain full control over the truck and driver during the term of the lease. Accordingly, the indemnity provision was rightfully held unenforceable. In the present case, however, there is no such violation of the regulation.

Secondly, the public policy of protecting the personal safety of the public on our highways is not compromised here. For the claim is based upon damage to the shipment itself, not personal injury of third persons.

Furthermore, I believe the reasoning of the Court in Chicago, R. I. & P. R. Co. v. Chicago B. & Q. R. Co., 437 F.2d 6, (7th Cir. 1971) should control here. In that case, the Burlington Railroad sought indemnification from the Rock Island Railroad for damages it paid to passengers injured in a train wreck. The Rock Island train was travelling on Burlington tracks under an agreement which required the former to hold the latter harmless for any claims arising from the former's use of the tracks. Apparently, the switching signal system on the Burlington line was defective, causing the train crash. The Rock Island resisted Burlington's claims on the ground that the public policy in the Federal Safety Appliance Act of ensuring passenger safety would be compromised if the negligent party (Burlington) were permitted to recover under the indemnification clause. The Court rejected Rock Island's argument, saying:

"(T)he distribution of risks undertaken by this contract does not impair the policies or force of the Federal Safety Appliance Act  . . . . (T)hese provisions of the contract represented an adjustment of the private relations between the two carriers but did not alter their duties to the public as common carriers." 437 F.2d at 9–10. (citations omitted)

The opinion in *Alford* apparently overlooks the decision in Chicago, R. I. & P. R. Co. v. Chicago B. & Q. R. Co., *supra.* I consider the latter decision to be more correct under the facts of the present case.

Any lingering doubt created by Schreiber's public policy argument is dispelled by the public policy of fostering freedom of contract. In Baltimore & Ohio Southwestern Railway Company v. Voigt, 176 U.S. 498, 20 S.Ct. 385, 44 L.Ed. 560 (1900), the Court said it must not be forgotten that,

"the right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appears that they clearly contravene public right or public welfare."

The defendant's motion for judgment on the pleadings is therefore denied.

It is so ordered.