CONTINENTAL INSURANCE COMPANY, Respondent, v. DAILY EXPRESS, INC., Appellant: MERKLEY, Defendant.

*No. 448. Argued April 8, 1975.—Decided June 3, 1975.*
(Also reported in 229 N. W. 2d 617.)

For the appellant there were briefs by *L. E. Sheehan* and *Moen, Sheehan & Meyer, Ltd.* and oral argument by *Paul W. Henke, Jr.,* all of La Crosse.

For the respondent there was a brief by *Thomas H. Sleik* and *Hale, Skemp, Hanson, Schnurrer & Skemp,* all of La Crosse, and oral argument by *Mr. Sleik.*

HEFFERNAN, J.  The appeal is from a trial court order denying the motion of the defendant, Daily Express, Inc., for summary judgment. The question posed on this appeal is whether the indemnification provision in the trip lease entered into between Daily Express, Inc., lessor, and Jerry Lipps, Inc., lessee, by which the lessor agrees "to reimburse and otherwise indemnify Lessee

for any and all losses sustained by Lessee resulting from the use of the aforesaid equipment," is unenforceable because it is against public policy, as expressed in the United States Code and the Interstate Commerce Commission regulations. We conclude that the indemnification agreement in the lease is enforceable and not contrary to public policy, and accordingly we affirm the trial court.

On May 20, 1971, Daily Express, Inc., leased a tractor and trailer, including the furnishing of a driver, to Jerry Lipps, Inc. The lease agreement or trip lease covered a one-way trip from Georgia to Minnesota. On May 24, 1971, while goods were being shipped in the leased vehicle, an accident occurred in Monroe county, Wisconsin, which resulted in loss and damage to the goods being shipped. The insurer of Lipps, the lessee, The Continental Insurance Company, paid the shipper for the loss of goods, and it is subrogated to the rights of Jerry Lipps, Inc.

At the time of the accident, both Lipps and Daily Express were licensed motor carriers subject to Interstate Commerce Commission regulations. As the subrogated claimant, Continental Insurance, sought idemnity from the lessor, Daily Express, under the indemnification provision quoted above. Daily Express moved for summary judgment and argued that the indemnification provision was unenforceable as against the public policy stated in the Interstate Commerce Commission regulations. The key regulation, 49 CFR, sec. 1057.4 (a) (4), provides:

"Other than equipment exchanged between motor common carriers in interchange service as defined in sec. 1057.5, authorized carriers may perform authorized transportation in or with equipment which they do not own only under the following conditions:

"(a) *Contract requirements.* The contract, lease, or other arrangement for the use of such equipment:

"(4) *Exclusive possession and responsibilities.* Shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said contract, lease or other arrangement . . . ."

Daily Express contends that the indemnification provision attempts to shift to the lessor the responsibility for the safety and maintenance of the equipment, while the purpose of the I. C. C. regulation is to make the lessee responsible. Daily Express also points out that other provisions of the lease specifically tend to shift the responsibility to the lessor:

"The Lessor agrees to deliver to the Lessee the above equipment in good running order and condition; *maintain* the same in good working condition, furnishing all necessary oil, gasoline, tires, and repairs for the operation of said equipment and to pay all other expenses incident to such operation." (Emphasis supplied.)

"Lessor hereby agrees further to maintain his equipment in a good and efficient manner, observe all safety and other requirements of the I. C. C. and all other regulatory bodies having jurisdiction and to pay all fines due to overload, overlength, speeding or other willful acts of negligence in the operation of described vehicles, lack of permits or plates or any other fines assessed against him for any cause."

Continental, on the other hand, argues that under Wisconsin law a contract should be declared void or unenforceable as against public policy only in cases free from doubt. Moreover, Continental points out that indemnification agreements are not expressly prohibited by either the federal statutes or the Interstate Commerce Commission's regulations. It further relies on other terms of the lease which specifically place the responsibility upon the lessee in a manner fully consistent with the letter and the spirit of the I. C. C. regulations. The lease provides:

"It is understood that the leased equipment under this agreement is in the exclusive possession, control, and use of the authorized carrier Lessee and that the Lessee assumes full responsibility in respect to the equipment it is operating to the public, the shippers, and the Interstate Commerce Commission."

There was also evidence stipulated into the record that Lipps checked the equipment for defects and that the driver was physically examined pursuant to the terms of the lease.

Continental argues that the responsibilities that are placed upon the lessor are in furtherance, and not in contravention, of the I. C. C. safety regulations, because, under the lease, the lessor, too, must adhere to safety standards, although the ultimate responsibility "to the public, the shippers, and the Interstate Commerce Commission" is placed upon the lessee.

To determine whether these provisions are consistent with the policy sought to be implemented by the I. C. C. regulations, it is necessary to discuss the purposes of these regulations. The background problem and the circumstances giving rise to the promulgation of these I. C. C. regulations were discussed in *American Trucking Associations v. United States* (1953), 344 U. S. 298, 302–306, 73 Sup. Ct. 307, 97 L. Ed. 337.

The United States Supreme Court, in discussing the underlying act, pointed out that interstate commerce authorization in the form of permits or certificates of convenience and necessity were, by virtue of the Motor Carrier Act, preconditions to interstate service by the motor truck industry. Granted only after a showing of fitness and ability to perform and a public need for the proffered service, the authorization specifically limited the scope and business of the permitted operations and the routes and termini to be served by a certified motor carrier. The act, however, waived these conditions of agency authorization and service limitations for cer-

tain exempt operations. There was no mandate on the exempt owners-operators to provide adequate and nondiscriminatory service, to adhere to published rates, or to comply with the strict insurance requirements imposed on carriers authorized for general carriage.

Because of the limiting character of the regulatory system, authorized carriers developed a wide practice of using nonowned equipment. One of the practices was the leasing of exempt equipment for authorized operations. The authorized carriers hired the owner-operator truckers, who were exempt, to conduct operations under authorized carriers' permits and certificates.

Oral leases were common and some of the leases were not concluded until the trips were made. These informal and tenuous relationships permitted evasions of the limitations on certified and permitted authority. Since the driver of the exempt equipment was not an employee of the carrier, sanctions for violation of geographical restrictions were difficult to impose, especially in the case of single-trip lessors. Under cover of a lease from a local carrier, authorized carriers conducted operations beyond the territory they were entitled to serve. Other times, some operations were entirely fictional, being created ad hoc after the trip was made.

The United States Supreme Court noted that the I. C. C.'s safety requirements were not observed by the exempt lessors. Because the great bulk of leasing arrangements covered only one trip, the lessee carrier had little opportunity or desire to inspect the equipment, especially in cases where the agreement was made without the operator's appearance at the carrier's terminal. Enforcement sanctions by the carriers for violations were as difficult to impose as route standards. The court said:

"Hence, the carrier may not extend the supervision of rest periods, doctors' certificates, brakes, lights, tires,

steering equipment and loading, normally accorded his own employees and vehicles, to equipment and drivers secured through lease. And the owner-operator himself is called upon to push himself and his truck because of the economic impact of time spent off the road and investment in repairs on his slim profit margin." *American Trucking,* page 305.

The court noted that the absence of written agreements made the fixing of the lessee's responsibility for accidents highly difficult.

Specific regulations to cope with the problems enumerated in *American Trucking* are discussed therein and in *Alford v. Major* (7th Cir. 1972), 470 Fed. 2d 132, 134. Those regulations require, as a condition for the use of nonowned equipment by authorized carriers, the reduction of lease contracts to writing. 49 CFR 1057.4 (a) (2). The contracts are required to vest exclusive possession and responsibility for the equipment in the authorized carrier during the term of the lease. 49 CFR 1057.4 (a) (4). Nonowned equipment is to be inspected by the lessee when it receives possession. 49 CFR 1057.4 (c). The authorized carrier is to ascertain that the driver is familiar with the motor carrier safety regulations. 49 CFR 1057.4 (e). Compensation for the lessor is to be fixed in the lease. 49 CFR 1057.4 (a) (5).

The lease in the instant case complies with each of these rules. Moreover, the indemnification agreement is in no way inconsistent with the public policy stated in the Interstate Commerce Commission regulations. The lease, including the indemnification provision, deals with the very problems which the United States Supreme Court pointed out the regulations were intended to remedy. Under the contract, the lessee specifically assumes full responsibility for equipment during the term of the lease in respect to the public, the shippers, and the Interstate Commerce Commission.

Under the terms of the lease, the remedy of anyone injured by the use of the equipment is clearly against the lessee. The fact that the lessee was, under the terms of the contract, able to secure indemnification of his losses from the lessor, in no way alters his responsibility to the public, the shipper, or the Interstate Commerce Commission.

*Allstate Ins. Co. v. Alterman Transport Lines, Inc.* (5th Cir. 1972), 465 Fed. 2d 710, 713, points out:

". . . we find nothing in the language of 49 C. F. R. sec. 1057.4 (a) (4) which would prohibit two freely contracting parties from determining, as between themselves, which party will ultimately bear the cost of damages done to a third person. The only conceivable argument against such an arrangement would be that the regulation seeks to prevent indemnification on the theory that a trucking company, knowing it does not have to pay damages, might tend to be less careful in supervising and controlling the actions of its truck drivers. However, the same can be said of insurance coverage which the regulations obviously do not prohibit. We are of the opinion that had the I. C. C. intended to prevent indemnification between trucking companies it would have said so in precise terms."

We are aware that different circuits of the United States Court system have come to inconsistent conclusions in respect to the enforceability of an indemnification clause similar to that found in the lease between Daily Express and Lipps. *Alford v. Major* (7th Cir. 1972), 470 Fed. 2d 132; *Denver Midwest Motor Freight, Inc. v. Busboom Trucking, Inc.* (1973), 190 Neb. 231, 207 N. W. 2d 368; and *Gordon Leasing Co. v. Navajo Freight Lines* (1974), 130 N. J. Super. 290, 326 Atl. 2d 114, held the indemnification provision to be contrary to public policy and unenforceable.

On the other hand, the indemnification provisions were held enforceable in *Carolina Freight Carriers Corp.*

v. Pitt County Transportation Co. (4th Cir. 1974), 492 Fed. 2d 243; *Allstate Ins. Co. v. Alterman Transport Lines, Inc.* (5th Cir. 1972), 465 Fed. 2d 710; *Watkins Motor Lines, Inc. v. Zero Refrigerated Lines* (D. C. Ill. 1974), 381 Fed. Supp. 363; *General Expressways, Inc. v. Schreiber Freight Lines, Inc.* (D. C. Ill. 1974), 377 Fed. Supp. 1159; and *Cooper-Jarrett, Inc. v. J. Miller Corp.* (1972), 70 Misc. 2d 88, 332 N. Y. Supp. 2d 177.

We find the rationale of those cases holding the indemnification clause enforceable more persuasive. *Allstate,* in particular, whose facts are almost identical to those before us, is especially convincing. In *Allstate,* the Court of Appeals held that the fact that the lessor was required to perform the actual mechanical work, did not abrogate the lessee's responsibility when, in other respects, it assumed the obligations required by the I. C. C. regulations. In *Allstate,* although the lessor did the mechanical work, the lessee assumed the full responsibility for the operation of the unit, inspected the unit for defects, and was responsible for the quality of the work.

The Court of Appeals in *Allstate* said that, where that responsibility was definitely fixed upon the lessee, the indemnification, which amounted to no more than additional insurance, did not vitiate the specific responsibility imposed upon the lessee in full conformity with the letter and the spirit of the I. C. C. regulations.

It is difficult to understand the viewpoint of the lessor herein or of those courts which seem to think that an indemnification agreement is less likely to produce negligence-free maintenance and operation. Under that rationale, if followed to its logical conclusion, most insurance would be held to be contrary to public policy because it enables a negligent person to be free of the consequences of his negligence. This is not in accord with accepted views of the social utility of liability insurance.

We are not unmindful of the holding of the Court of Appeals of the Seventh Circuit in *Alford v. Major, supra.*

That case was distinguished in *Allstate, supra,* and *Carolina Freight Carriers, supra,* on the ground that in *Major,* the lessee conceded a prima facie violation because the lessor in fact retained full control during the term of the lease. While *Major* can thus be distinguished, the primary rationale of *Major*—that the goal of highway safety sought to be attained by the regulations was in some way subverted by the indemnification agreements—is not persuasive.

The law of the state of Wisconsin, stated in *Trumpf v. Shoudy* (1917), 166 Wis. 353, 164 N. W. 454, provides the standard to be applied when the validity of a contract is questioned on the grounds of public policy. A contract should be held unenforceable on that ground only in cases free from doubt. Lessor here has not raised any doubt of the validity of the indemnification agreement as viewed in the context of the lease. That view is bolstered only by the recitation of holdings that we consider unpersuasive. Under no circumstances apparent to us is there doubt that the indemnification agreement is fully consonant with public policy.

*By the Court.*—Order affirmed, and cause remanded for further proceedings.