No. 14827

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

INDUSTRIAL INDEMNITY COMPANY,
a corporation,

$\qquad$ Plaintiff and Respondent,

-vs-

DAVID McINTOSH,

$\qquad$ Defendant and Appellant.

---

Appeal from:  District Court of the Thirteenth Judicial District,
Honorable Robert H. Wilson, Judge presiding.

Counsel of Record:

For Appellant:

Olsen, Christensen & Gannett, Billings, Montana
Paul G. Olsen argued, Billings, Montana

For Respondent:

Anderson, Symmes, Brown, Gerbase, Cebull & Jones,
Billings, Montana
Steve Harman argued, Billings, Montana

---

Submitted:  December 13, 1979

Decided:  JAN - 3 1930

Filed:  JAN - 3 1930

Thomas J. Kearney
_____ Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant David McIntosh appeals from a judgment entered against him in Yellowstone County District Court. The judgment grants plaintiff Industrial Indemnity Co. indemnification from McIntosh for the amount paid in settlement of a Workmen's Compensation claim. We affirm.

The case was submitted to the District Court on agreed facts as follows: In a written contract dated April 30, 1974, McIntosh, an interstate hauler, agreed to provide a truck and driver for Lewis Grover of Idaho Falls, Idaho. Grover is an interstate carrier, certified by the Interstate Commerce Commission (ICC). The contract contained two clauses which are of particular importance to the resolution of the case. They are:

> "(11) . . . Contractor [McIntosh] shall save carrier harmless from any liability arising from the relationship between the contractor and any of contractor's employees, agents and servants, whether under industrial accident laws, workmen's compensation laws, or any other state or federal law applicable to employees and employers. Contractor [McIntosh] shall maintain workmen's compensation coverage for all employees, agents or servants employed by the contractor in the performance of this contract . . .
>
> ". . .
>
> "(13) Subject to the requirements of the Interstate Commerce Commission and of any state or provincial regulatory authorities having jurisdiction (a) The contractor [McIntosh] shall direct, in all respects, the operation of the equipment used in the performance of this contract.. . ."

Pursuant to the contract, McIntosh supplied Grover with a truck and driver. On May 23, 1974, Michael Weldon, the driver, was killed in an accident near Lolo, Montana. McIntosh had not obtained Workmen's Compensation coverage for Weldon as agreed in the contract. Weldon's widow filed a claim with the Workmen's Compensation Division against Grover and his insurer, Industrial Indemnity Co., the plaintiff herein.

Industrial Indemnity settled the claim with Weldon's widow for $75,000 and now seeks to recover that amount from McIntosh. In ruling in favor of Industrial Indemnity, the District Court held that McIntosh had breached his contractual duty to provide Workmen's Compensation coverage and alternatively, that he breached his contractual duty to indemnify Grover and his insurer. The validity of the contract is the dispositive issue on appeal.

McIntosh argues the contract is void because it is unlawful. Pursuant to 49 U.S.C. §304(e)(2), the ICC has the authority to promulgate regulations to insure that an interstate carrier using another's equipment shall "have full direction and control of such vehicles and will be fully responsible for the operation thereof. . ." The ICC's resulting regulation provides:

> ". . . authorized carriers may perform author-
> ized transportation in or with equipment which
> they do not own only under the following conditions.
>
> "(a) Contract requirements: The contract, lease,
> or other arrangement for the use of such equipment:
>
> ". . .
>
> "(4) . . . Shall provide for the exclusive poss-
> ession, control, and use of the equipment, and
> for the complete assumption of responsibility in
> respect thereto, by the lessee for the duration
> of said contract, lease or other arrangement . . ."
> 49 C.F.R. §1057.4.

The contract obligates McIntosh to "direct, in all respects, the operation of the equipment used in the performance of the contract." According to McIntosh, this violates the ICC regulation. He concludes the contract is "contrary to public policy, unlawful . . . and should be declared void." We disagree.

The regulation imposing carrier control and responsibility is intended:

-3-

> "(1) to prevent I.C.C. carriers from avoiding safety standards imposed by the I.C.C. by the simply practice of leasing equipment from non-regulated carriers; (2) to promote highway safety by insuring that drivers furnished by exempt carriers as part of the lease agreement do not violate safety regulations in the operation of the leased equipment; and (3) to provide shippers and other members of the public with financially responsible carriers." Indiana Refrigerator Lines, Inc. v. Dalton (6th Cir. 1975), 516 F.2d 795, 796.

The regulation "makes and keeps [the carrier] responsible to the public, the shipper, and the Commission." Transamerican Freight v. Brada Miller (1975), 423 U.S. 28, 39, 96 S.Ct. 229, 46 L Ed 2d 169. It was not intended to shield the owner of equipment from the consequences of its breach of contract.

Moreover, the provision of the contract that McIntosh claims is illegal is expressly "subject to the requirements of the Interstate Commerce Commission." We fail to understand how the contract violates ICC rules.

Upon examination of the entire contract, it is apparent that Grover, the carrier, was expressly made responsible for any injuries or damages sustained by a member of the public; for any damages sustained by a shipper; and to the ICC for compliance with its rules and regulations. So that the carrier could comply with ICC regulations, McIntosh was to supply it with the logs of his driver, vehicle reports, scale tickets, toll receipts, delivery receipts and other documents on a daily basis. McIntosh's express contractual duties included supplying a driver who met ICC regulations, being responsible for the payroll and expenses of his employees, paying the operating and maintenance expenses of the equipment as well as all taxes and fees incurred in transporting the consigned goods. He was also to maintain the equipment, and subject to ICC regulations, "be solely responsible for the direction and control of [his] employees, agents, and servants . . .

-4-

including selecting, hiring, supervising, directing, setting wages, hours and working conditions, paying and adjusting grievances.. . ."

We cannot hold the contract illegal. The policy of the ICC regulation was met by making the carrier exclusively responsible to the public, the shippers and the ICC. 40 C.F.R. 1057.4. The duties undertaken by McIntosh were essentially ministerial and do not contravene the regulation or the policy behind it. Transamerican Freight v. Brada Miller, supra; for similar contracts held not to violate 40 C.F.R. 1057.4; see Carolina Freight Carrier Corp. v. Pitt County Transp. Co. (4th Cir. 1974), 492 F.2d 243; Continental Ins. Co. v. Daily Express (1975), 68 Wis.2d 581, 229 N.W.2d 617.

The clause of the contract wherein McIntosh agreed to indemnify the carrier for any Workmen's Compensation liability it might incur as to McIntosh's employees is not contrary to the requirement of carrier control and responsibility. 40 C.F.R. 1057.4; Transamerican Freight v. Brada Miller, supra; Indiana Refrigerator Lines, Inc. v. Dalton (6th Cir. 1975), 516 F.2d 795; Indiana Insurance Co. v. Parr Trucking Service, Inc. (6th Cir. 1975), 510 F.2d 490; Jones Truck Lines, Inc. v. Ryder Truck Lines, Inc. (6th Cir. 1974), 507 F.2d 100; Carolina Freight Carrier Corp. v. Pitt County Transp. Co., supra; Watkins Motor Lines Inc. v. Zero Refrigerated Lines (N.D.Ill. 1974), 381 F.Supp. 363, aff'd (7th Cir. 1975), 525 F.2d 538; General Express, Inc. v. Schreiber Freight Lines, Inc. (N.D. Ill. 1974), 377 F.Supp. 1159; Continental Ins. Co. v. Daily Express, supra; Cooper Jarrett, Inc. v. J. Miller Corp. (1972), 70 Misc.2d 88, 332 N.Y.S.2d 177; Newsome v. Surratt (1953), 237 N.C. 297, 74 S.E.2d 732; accord Truck Ins. Exchange v. Transport Indemnity Co. (1979), _____ Mont. _____, 591 P.2d 188, 36 St.Rep. 295.

McIntosh, having accepted a benefit under a lawful contract may not now repudiate his obligations arising under the same contract.  Section 28-2-503(2), MCA.

Affirmed.

_____
Chief Justice

We Concur:

_____

_____

_____

_____
Justices

Mr. Justice John C. Sheehy specially concurring:

I concur, but only because of the inescapable language of the United States Supreme Court in Transamerican Freight Lines Inc. v. Brada Miller Freight Systems (1975), 423 U.S. 28, 96 S.Ct. 229, 46 L.Ed.2d 169. That case holds that leases of trucking equipment such as here which give the lessor (owner) of the truck "operational control and responsibility" are not in violation of the ICC regulations. When that court shoots holes of that size in the regulatory fabric, it will not hold against the wind for any decision we might render to enforce the regulations realistically. Otherwise we could apply the principle that when parties in pari delicto to an unlawful contract seek to enforce its terms, the law leaves them where it finds them. See for example, May v. Whitbeck (1941), 111 Mont. 568, 113 P.2d 332.

_____John C. Shuchy_____
Justice