No. 14267

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

TRUCK INSURANCE EXCHANGE, a
reciprocal or inter-insurance
exchange,

        Plaintiff and Appellant,

-vs-

TRANSPORT INDEMNITY COMPANY,
a corporation,

        Defendant and Respondent.

---

Appeal from:  District Court of the Third Judicial District,
            Honorable Robert J. Boyd, Judge presiding.

Counsel of Record:

    For Appellant:

        Worden, Thane and Haines, Missoula, Montana
        Ronald Bender argued, Missoula, Montana

    For Respondent:

        Gough, Shanahan, Johnson and Waterman, Helena,
         Montana
        Daniel Murphy argued, Helena, Montana

---

        Submitted:  December 19, 1978

        Decided:  FEB 21 1979

Filed: FEB 21 1979

_Thomas J. Kearney_
                      Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiff appeals from an amended judgment of the Powell County District Court granting summary judgment in favor of defendant on the question of liability for insurance coverage and rights of indemnification.

This is a controversy between two insurance companies as to which is obliged to provide coverage and defend against property damages and personal injuries arising out of an accident that occurred on January 24, 1976, on the Racetrack overpass near Galen, Montana. That accident involved a semitractor and trailer and a passenger car. The tractor on the semi belonged to Forest Products International, Inc. (FPI, an Oregon based contract hauler, and was being driven by one Michael Wirkkala, an employee and major stockholder of FPI. The trailer on the rig belonged to International Transport, Inc. (ITI), a Minnesota corporation which is an authorized carrier licensed by the Interstate Commerce Commission (I.C.C.).

At the time of the accident, appellant Truck Insurance Exchange had an insurance policy in effect with FPI and with Michael Wirkkala individually, and respondent Transport Indemnity Co. had a policy in effect covering ITI. The dispute arises over conflicting provisions in the two policies as affected by certain I.C.C. regulations and the terms of a "haulers contract" entered into between FPI and ITI.

On January 23, 1976, FPI and ITI executed a "Single Trip or Exempt Haulers Contract" whereby ITI (the carrier) retained the services of FPI (the hauler, Michael Wirkkala owner-operator) to transport an ITI-owned trailer from Oregon to Minnesota. ITI, as a licensed carrier, is subject to regulations promulgated by the I.C.C. FPI, as a hauler only and not a certified carrier, does not have to meet the same I.C.C. requirements.

- 2 -

Among the terms of the hauler's contract were numerous provisions which the I.C.C. requires licensed carriers to include in such agreements. One of those provisions appears in the contract as paragraph 6 and reads:

> "During the existence of this contract, the Carrier
> [ITI] assumes liability for bodily injuries to or
> the death of any person (except the Hauler, or the
> employees, agents or servants of the Hauler) or for
> the loss or damages to the property of others
> (except the Hauler, or the employees, agents or
> servants of the Hauler) resulting from the negli-
> gent operation, maintenance or use of the vehicles
> described in appendix A hereof . . ."

Both the tractor owned by FPI and Michael Wirkkala, and the trailer owned by ITI were described in appendix A of the contract.

An insurance company that enters into a policy of insurance with a licensed carrier is required by federal statute and regulation to file with the I.C.C. a certificate of insurance conditioned to pay up to specified limits any claims against its insured carrier arising out of negligent operation of motor vehicles under the carrier's operating permit. Respondent Transport Indemnity Co., ITI's insurer, had filed such a certificate of coverage for ITI here.

As a result of the accident on January 24, 1976, various parties have filed personal injury and property damage suits naming FPI and ITI as defendants. On April 20, 1977, appellant Truck Insurance Exchange (FPI's insurer) filed a declaratory judgment action in Powell County District Court seeking a declaration that respondent Transport Indemnity Company (ITI's insurer) was obligated to FPI by reason of the assumption of liability clause in the hauler's contract to provide coverage for and defend against any claims asserted against FPI.

On June 8, 1977, respondent Transport Indemnity Co. (ITI's insurer) filed an answer denying responsibility for providing coverage for or assuming the defense of the damages arising out of the accident and counterclaiming that all said damages were a

- 3 -

consequence of the negligence of FPI and that therefore appellant Truck Insurance Exchange, as FPI's insurer, was responsible for them. The counterclaim cited several provisions from the insurance policy issued to FPI by Truck Insurance Exchange to support that conclusion. The cited provisions included the coverage clauses whereby Truck Insurance Exchange bound itself to pay all damages FPI became legally obligated for because of bodily injury or property damage arising out of the ownership, maintenance, or use of the vehicle to which the insurance applied, and the clause giving Truck Insurance Exchange the right and duty to defend any suit against FPI on account of such bodily injury or property damage. The counterclaim also cited language from the Truck Insurance Exchange policy issued to FPI that the insurance afforded by it was primary insurance, and contrasted that to language in the Transport Indemnity Co. policy issued to ITI that if at the time of an occurrence to which the Transport Indemnity Co. insurance applied there was in effect any other valid and collectible insurance applicable to the same occurrence, then counterclaimant Transport Indemnity's insurance was excess insurance only.

As originally framed, the counterclaim included an allegation that certain language in the insurance policy issued to FPI by Truck Insurance Exchange also extended coverage to ITI, Transport Indemnity Co's named insured, and that therefore the policy issued to ITI by Transport Indemnity Co. was only excess insurance giving use to no primary duty or liability on the part of Transport Indemnity Co. On appeal, the claim that ITI is an included insured is abandoned and it is apparently conceded that ITI is not covered by the Truck Insurance Exchange policy because of a specific exclusion therein. (The effect of the excess coverage clause on the issue of which insurer is liable for primary coverage, however, is still contested.)

The significant underlying theory of the counterclaim for purposes of this appeal is that ultimate responsibility for the accident lay in the negligence of Michael Wirkkala; that the Truck Insurance Exchange policy is the only policy specifically extending coverage to him; and that therefore Truck Insurance Exchange is obligated to defend ITI against any claims asserted against it from the accident and indemnify Transport Indemnity Co. for any settlements or other liabilities paid on behalf of ITI by Transport Indemnity Co. under its policy with ITI.

Truck Insurance Exchange filed its reply to the counterclaim on July 14, 1977, admitting that the language cited in the counterclaim was included in the policy issued to FPI by Truck Insurance Exchange but alleging that other language in the policy precluded the conclusion that Truck Insurance Exchange was liable for primary coverage. The reply did not specify what other language Truck Insurance Exchange relied on.

Subsequent to the filing of the original pleadings, an error in the naming of the plaintiff became apparent and amended pleadings were filed. The amended pleadings are substantially identical to the originals except for the change in name.

After a period of discovery, both sides moved for summary judgment and submitted briefs in support of their motions. The brief of Truck Insurance Exchange specified the language from the policy issued by Transport Indemnity Co. on which Truck Insurance Exchange based its allegation that the Transport Indemnity Co. policy should be liable for coverage. The language cited emphasizes that an "insured" under the Transport Indemnity Co. policy includes the named insured and "any other person, firm or organization to whom insurance protection has been extended under the policy or made so by any provision of law". Language from each of the coverage clauses to the effect that Transport Indemnity

Co. will pay all sums for which "the insured shall become legally obligated, by contract or otherwise . . . arising out of the occupation of the named insured" was also emphasized. By tying this language to the previously mentioned assumption of liabilities clause in the hauler's contract and the federal statutes under which the I.C.C. had issued the regulations requiring such clauses, the Truck Insurance Exchange brief concluded that coverage under the Transport Indemnity Co. policy insuring ITI, an I.C.C. regulated carrier, was extended thereby to the damages at issue by operation of law and by contract within the meaning of the policy.

On January 19, 1978, the District Court entered an order granting summary judgment to Transport Indemnity Co., insurer of ITI, the licensed carrier. The court based its decision on the United States Supreme Court case of Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc. (1975), 423 U.S. 28, 96 S.Ct. 229, 46 L Ed 2d 169, which held under circumstances similar to those here that the party responsible in law (here, under the I.C.C. regulations, ITI, insured by Transport Indemnity Co.) may seek indemnity from the party responsible in fact (here, FPI and Michael Wirkkala, insured by Truck Insurance Exchange).

A petition for rehearing was subsequently filed by Truck Insurance Exchange, alleging that the case relied on was distinguishable and that under the provisions of the policies and all the circumstances present here Michael Wirkkala was an included insured under the Transport Indemnity Co. policy against whom Transport Indemnity had no claims for the reason that there is no subrogation or indemnification by an insurer against its own insured. The petition for rehearing was denied, and judgment was entered for Transport Indemnity Co. on February 9, 1978. The judgment ordered that Truck Insurance Exchange "is obligated

- 6 -

by its policy to defend and indemnify ITI for any settlements, judgments, attorney fees and expenses incurred in connection with the civil actions instituted as a result of the accident of January 24, 1976." An amended judgment filed February 27, 1978, corrected the judgment to reflect that Truck Insurance Exchange's liability was only to the extent of its policy limits. From that amended judgment, Truck Insurance Exchange has brought this appeal.

The issues we find controlling, together with the determinative arguments and authorities, are as follows:

Issue I. Did the District Court err in relying on Transamerican Freight Lines Inc. v. Brada Miller Freight Systems, Inc. (1975), 423 U.S. 28, 96 S.Ct. 229, 46 L Ed 2d 169, as authority for its order of summary judgment on the circumstances present here? We conclude that it did.

While the Brada decision involved the same federal statutes and regulations as here with respect to motor carriers' use under leases of motor vehicles not owned by them, 49 U.S.C. §304(e), 49 C.F.R. §1057.4(a)(4), a close reading of the case indicates it is not controlling. It is true that in Brada the court said: "Although one party is required by law to have control and responsibility for conditions of the vehicle, and to bear the consequences of any negligence", (referring to I.C.C. licensed carriers, and the duties imposed on them by the federal statutes and regulations), "the party responsible in law to the injured or damaged person may seek indemnity from the party responsible in fact." Brada, 423 U.S. at 40, 96 S.Ct. at 235, 46 L Ed 2d at 179. However, distinguishing facts and other language in the opinion limiting its scope do not permit the broad conclusion Brada was cited for here that any I.C.C. carrier can ignore its statutory assumption of liability and seek indemnity from the negligent party anytime.

In Brada both parties were authorized carriers. Transamerican apparently had more business than its equipment could handle, while Brada had some spare equipment. Transamerican therefore leased a rig from Brada, to be operated by a Brada driver but over Transamerican's routes and under Transamerican's operating authority. The lease, as required by the I.C.C. regulations, recited that Transamerican, the certified carrier, had responsibility for the operation of the equipment "in respect to the public, shippers, and I.C.C." In addition, the lease contained a separate paragraph in which Brada, the lessor, specifically agreed to indemnify Transamerican for any claims or losses arising out of negligent operation of the vehicle by the Brada driver. The narrow question before the Court was whether the indemnification agreement was void and ineffective as contrary to the public policy behind the I.C.C. regulations (that licensed carriers would be responsible in fact, as well as in law, for the actions of borrowed drivers). The Court pointed out that: "The regulations do not expressly prohibit an indemnification agreement between the lessor and the lessee. In fact they neither sanction nor forbid it." Brada, 423 U.S. at 39-40, 96 S.Ct. at 235, 46 L Ed 2d at 178. The Court concluded: "We hold only that the presence in an equipment lease of an indemnification clause directed to the lessor's negligence is not in conflict with the safety concerns of the Commission or with the regulations it has promulgated." Brada, 423 U.S. at 41, 96 S.Ct. at 236, 46 L Ed 2d at 179.

Thus, reliance on Brada as authority here was inappropriate. Here, there was no specific undertaking in the lease by the lessor to indemnify the lessee authorized carrier. To cite Brada as blanket authority for indemnification in the absence of such a specific agreement is to circumvent the I.C.C. regulations placing

primary responsibility on the carrier.

Issue II. Does the Transport Indemnity Co. policy include Michael Wirkkala as an insured so that no rights of indemnity or subrogation can arise in favor of Transport Indemnity Co.? We hold that it does.

There is no right of subrogation in favor of an insurance company against its own insured. Home Insurance Co. v. Pinski Brothers, Inc. (1972), 160 Mont. 219, 500 P.2d 945. This is true both as to the named insured and as to any party to whom coverage is extended under the terms of the policy; an additional insured is entitled to the same protection as the named insured. Cf. American Surety Company of N.Y. v. Canal Ins. Co. (4th Cir. 1958), 258 F.2d 934.

Respondent Transport Indemnity Co.'s brief concedes that the terms of the additional insured endorsement in the policy it issued to ITI extend coverage to FPI. Respondent is adamant, however, that the endorsement does not extend coverage to Michael Wirkkala. Therefore, respondent argues, Transport Indemnity Co. is not barred from indemnification by Wirkkala by the rule that an insurer cannot seek indemnity from its own insured.

Respondent's argument that the endorsement does not extend coverage to Wirkkala is based on an erroneous premise. The pertinent language in the endorsement is:

> "It is hereby understood and agreed that the insurance . . . is extended to any person or organization (hereinafter called CONTRACTOR) as an additional INSURED but only with respect to the ownership, operation, maintenance or use of AUTOMOBILES whether owned or nonowned by CONTRACTOR which are contracted to the NAMED INSURED under a written supplemental lease or contract subject to all terms and conditions of the policy to which this endorsement is attached . . .."

Transport Indemnity Co. argues that by this endorsement the coverage of their policy is extended only to persons or organizations who contract with the named insured (ITI) for the lease of motor

vehicles. Thus, respondent argues, since the lease contract was only between ITI and FPI and not between ITI and Wirkkala, coverage is not extended to Wirkkala.

This conclusion improperly construes the language of the endorsement. The endorsement does not refer to "persons or organizations contracting with the named insured" (as Transport Indemnity argues). Rather, it refers to "<u>automobiles</u> . . . contracted to the named insured" (Emphasis added.), and extends coverage to "any person or organization . . . with respect to the ownership, operation, maintenance or use" of the contracted automobiles. The proper interpretation of that language clearly extends coverage to both FPI and Wirkkala regardless of whose name appears on the contract leasing the vehicle to ITI. This conclusion is buttressed by the fact that Transport Indemnity Co.'s interpretation of the endorsement would render it substantially meaningless in that FPI, the contracting party, could never itself "operate, maintain, or use" the vehicle, but could do so only through its agents or employees who would never ordinarily be direct parties to the contract. We conclude, therefore, that the Transport Indemnity Co. policy <u>does</u> run to Michael Wirkkala by its own terms under the additional insured endorsement and that respondent is barred from seeking indemnification from him.

Issue III. Do federal statutes and regulations automatically impose responsibility for primary coverage on the insurer of the I.C.C. carrier as a matter of law? We find that they do not.

49 U.S.C. §315 and 49 C.R.F. §1043.1(a) provide that no I.C.C. certificate or permit shall be issued to a motor carrier unless it has filed with the I.C.C. proof that the carrier is insured against any liabilities arising out of operations under its certificate or permit. In this case, Transport Indemnity Co.,

- 10 -

ITI's insurer, filed with the I.C.C. and attached to the policy issued to ITI the following certificate of endorsement (in pertinent part):

> "In consideration of the premium stated in the policy to which this endorsement is attached, the Company hereby agrees to pay, within the limits of liability hereinafter provided, any final judgment recovered against the insured for bodily injury to or death of any person, or loss of or damage to property of others . . . resulting from negligence in the operation, maintenance, or use of motor vehicles under certificate of public convenience and necessity or permit issued to the insured by the Interstate Commerce Commission . . .
>
> " . . .
>
> "Within the limits of liability . . . it is further understood and agreed that no condition, provision, stipulation, or limitation contained in the policy . . . shall relieve the Company from liability hereunder . . .."

Truck Insurance Exchange has taken the position throughout this case that because Transport Indemnity Co. filed the above quoted endorsement, as required by the federal statutes and regulations, it is liable for primary coverage as a matter of law. Transport Indemnity Co. counters that the federal statutes and regulations are not determinative and do not absolve Truck Insurance Exchange of the contractual responsibility to provide primary coverage for FPI and Michael Wirkkala under the policy it issued to them.

There is a plethora of case law involving disputes between insurers (on facts similar to those involved here) as to what effect the I.C.C. regulations have on coverage and rights of subrogation and indemnity. The authority is mainly from federal court decisions.

Many cases stand for the proposition that the I.C.C. encorsement does impose primary liability as a matter of law on the insurer of the licensed carrier under whose permit a vehicle is in use at the time of an accident. Cf. Argonaut Insurance Co. v. National Indemnity Co. (10th Cir. 1971), 435 F.2d 718; Hagans v. Glen Falls Insurance Co. (10th Cir. 1972), 465 F.2d

- 11 -

1249; Ryder Truck Lines v. Carolina Cas. Ins. Co. (Ind.App. 1978), 372 N.E.2d 504; Allstate Insurance Co. v. Federal Insurance Co. (1974), 23 Md.App. 105, 326 A.2d 29.

Conversely, there are also numerous cases that reject the notion that the I.C.C. regulations are determinative. Cf. Allstate Insurance Co. v. Liberty Mutual Insurance Co. (3rd Cir. 1966), 368 F.2d 121; Wellman v. Liberty Mutual Insurance Company (8th Cir. 1974), 496 F.2d 131; Vance Trucking Company v. Canal Insurance Company (D.S.C. 1966) 249 F.Supp. 33, aff'd (4th Cir. 1968), 395 F.2d 391, Cert. denied, 393 U.S. 845, 89 S.Ct. 129, 21 L Ed 2d 116 (holding that I.C.C. regulations are not designed to excuse a party from liability he might otherwise have).

The most recent decision in the area, and one of the best reasoned, is also one that closely parallels many of the facts present here. Carolina Cas. Ins. Co. v. Underwriters Ins. Co. (5th Cir. 1978), 569 F.2d 304.

In Carolina Cas. the court held:

" . . . the endorsement does not make (the insurer of the licensed carrier) the primary insurer as a matter of law . . . I.C.C. policy factors are frequently determinative where protection of a member of the public or a shipper is at stake, but those factors cannot be invoked by another insurance company which has contracted to insure a specific risk and which needs no equivalent protection." 569 F.2d at 313.

We find that reasoning persuasive and adopt it as controlling.

Issue IV. Should one of the insurers here be responsible for primary coverage and the other for excess or should coverage be prorated between them? We conclude that coverage should be prorated.

To this point, two things have been determined:

(a) Michael Wirkkala is insured under both policies involved here (as an additional insured under the additional insured endorsement in the Transport Indemnity Co. policy, and as a named insured under the Truck Insurance Exchange policy). Thus,

- 12 -

Transport Indemnity Co. is not entitled to indemnification from Michael Wirkkala and cannot shift primary liability to Truck Insurance Exchange on that ground.

(b) There is a fairly even split of authority on whether I.C.C. regulations automatically impose primary coverage on the insurer of the certified carrier as a matter of law. The line of reasoning we find persuasive holds that they do not. Thus, Truck Insurance Exchange cannot shift primary liability to Transport Indemnity Co. on that ground.

The upshot is that both insurance companies have legitimate arguments that the other should be primarily responsible.

Truck Insurance Exchange argues that by reason of the terms of the lease contract between ITI and FPI, where in paragraph 6 ITI assumes liability for negligent operation of the vehicles, Truck Indemnity Co. as ITI's insurer is absolutely liable for primary coverage. Truck Indemnity Co. replies that it is not a party to and therefore not bound by the terms of that contract. "It is well settled that disputes of this sort hinge principally on the express terms of the policy and an insurer's contractual obligations cannot ordinarily be altered by collateral agreements between its insured and third persons." Carolina Cas., 569 F.2d 313.

The express terms of the Transport Indemnity Co. policy state that if at the time of an occurrence to which the insurance applies there is in effect other insurance applicable to the same occurrence, then Transport Indemnity's policy provides excess coverage only. The express terms of the Truck Insurance Exchange policy, on the other hand, state that where other insurance is applicable, the amount of Truck Insurance Exchange's liability shall not be reduced by the existence of such other insurance. Thus, Truck Insurance Exchange provides primary coverage.

"However, it is equally well settled that a court can look to outside sources--such as lease agreements and I.C.C. regulations--to define the status of persons who are covered by the insurance contract." Carolina Cas., 569 F.2d at 314. In addition to the assumption of liability by Transport Indemnity's insured in the hauler's contract, the I.C.C. endorsement attached to the Transport Indemnity Co. policy specifies that "no condition, provision, stipulation or limitation contained in the policy shall relieve the Company from liability hereunder." Thus, the excess coverage clause, at least up to the limits of liability specified in the I.C.C. endorsement, is negated and ineffective to relieve Transport Indemnity Co. from primary coverage.

Taking into consideration all of the above factors, we conclude that both insurers have obligated themselves to provide primary coverage. Coverage should be prorated between them in accordance with the limits of liability applicable in each policy.

In conclusion, we note that although Truck Insurance Exchange itself moved for summary in the District Court, on appeal it argues that summary judgment is improper because genuine issues of fact exist as to Michael Wirkkala's negligence. Transport Indemnity Co. replies that Truck Insurance Exchange proceeded in the District Court as if no genuine issues of fact were present and cannot now be heard to argue that summary judgment is precluded. Having determined that neither party is entitled to summary judgment against the other because both provide primary coverage, we have rendered this issue moot.

The order of the District Court granting summary judgment in favor of Transport Indemnity Co. is vacated. The cause is remanded with instructions to enter a declaratory judgment:

(a) That Transport Indemnity Co. provides primary coverage to ITI, FPI, and Michael Wirkkala and Truck Insurance Exchange

provides primary coverage to FPI and Michael Wirkkala;

(b) That if Michael Wirkkala was the negligent party, then coverage for any settlements or judgments should be pro-rated between Truck Insurance Exchange and Transport Indemnity Co. based upon the applicable policy limits in each policy;

(c) That if the insurers contest the negligence of their insureds, then the contestant or contestants are obligated to defend their insureds against the claims pending in the District Court, each insurer to be responsible for its own attorney fees and costs and any judgments returned against its insureds.

Reversed and remanded.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices