The TRAVELERS INSURANCE COMPANY, Plaintiff-Appellant,

v.

TRANSPORT INSURANCE COMPANY, Defendant-Third-Party Plaintiff-Appellee,

v.

FEDERAL INSURANCE COMPANY, Third-Party Defendant.

No. 85–1215.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 1985.

Decided April 3, 1986.

James W. Riley, Jr., Callahan, Riley & Hillis, Indianapolis, Ind., for plaintiff-appellant.

John E. Doran, Doran, Manion, Boynton, Kamm & Esmont, South Bend, Ind., for defendant-third-party plaintiff-appellee.

Before CUDAHY and RIPPLE, Circuit Judges, and WILL, Senior District Judge.*

CUDAHY, Circuit Judge.

In this declaratory judgment action an insurance company seeks a determination as to which of three insurance companies must provide primary coverage for liability arising out of the collision of a tractor-trailer with an automobile. We affirm the district court's decision that the two policies covering the owner-operator of the truck afford primary coverage here.

*FACTS.* Clinton J. Flanigan, chairman and sole shareholder of Flanigan Tires, Inc. ("Flanigan Tires"), an Indiana corporation engaged primarily in the sale of tires, was driving a tractor-trailer owned by Flanigan Tires through Starke County, Indiana on August 29, 1982 when he made a left turn in front of an automobile. The automobile ran into the truck; one passenger in the automobile was killed and one passenger injured.

At the time of the accident Mr. Flanigan was hauling a load of tin cans from West Chicago, Illinois to Columbus Grove, Ohio under a "trip lease" agreement entered into the previous day with Commercial Mo-

---

* Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

tor Freight, Inc. ("Commercial"),[1] an Ohio corporation holding an Interstate Commerce Commission ("ICC") permit for commercial freight transport. The trip lease provided that Flanigan Tires would lease its truck to Commercial for a single one-way trip: Flanigan Tires provided the truck and driver and Commercial the ICC operating permits and placards to be displayed on the truck pursuant to ICC regulations. Mr. Flanigan's tire business required him to pick up tires from distant suppliers; so that the truck would not travel empty on the way to the suppliers, he would trip lease it to commercial truckers for one-way hauling jobs. In a deposition taken in the underlying negligence action and made part of the record in this case, Mr. Flanigan testified that he had been trip leasing his truck two or three times a month for the three years prior to the accident. This was the second such agreement he had entered into with Commercial. Deposition of Clinton J. Flanigan, at 38–40.

Eric Spriggs, the injured passenger, and the estate of Robert Spriggs, the deceased passenger, brought suit against Mr. Flanigan, Flanigan Tires, and Commercial in the federal district court for the Northern District of Indiana, alleging negligence in the operation of the tractor-trailer unit. At the time of the accident, Mr. Flanigan and Flanigan Tires were insured against motor vehicle liability up to a limit of $500,000 under a policy issued by the Travelers Insurance Company ("Travelers"). Both were also covered by a policy issued by Federal Insurance Company ("Federal") providing excess motor vehicle liability insurance up to a limit of $1,000,000. Commercial was covered by a policy issued by Transport Insurance Company ("Transport") that insured against motor vehicle liability up to a limit of $5,000,000. Travelers filed an action for a declaratory judgment in the Circuit Court of St. Joseph County, Indiana, naming Transport as the defendant and seeking a determination as to which policy provided primary coverage for the injuries sustained in the accident.

Transport removed the suit to the Northern District of Indiana and joined Federal as a third-party defendant. Transport moved for summary judgment and, after exhaustive briefing by all parties, the trial judge entered an order on January 29, 1985, holding that Travelers' policy afforded primary coverage, Federal's policy applied after exhaustion of Travelers' policy and Transport's policy applied after exhaustion of Travelers' and Federal's policies. *Travelers Insurance Co. v. Transport Insurance Co.*, No. S–83–463 (N.D.Ind. Jan. 29, 1985).

The trial judge ruled that an Indiana statute addressing primary motor vehicle coverage determines primary coverage in this case. The statute reads:

Sec. 1. Sections 2 and 3 of this chapter apply if:

(1) two (2) or more valid, collectible policies affording motor vehicle liability insurance apply to an occurrence out of which a loss occurs; and

(2) one (1) of the policies in subdivision (1) affords coverage to a named insured engaged in the business of selling, leasing, repairing, servicing, delivering, testing, road testing, parking, or storing motor vehicles.

Sec. 2. Except as provided by section 4 of this chapter, if the conditions of section 1 of this chapter are met, and at the time of the loss the motor vehicle involved in the loss was operated by a person (or that person's agent or employee) engaged in a business as provided by section 1(2) of this chapter:

(1) the insurance afforded by the policy issued to the person engaged in that business shall be the primary insurance; and

(2) the insurance afforded by any other insurance policy shall, within the limits of that policy, cover that part of the loss not covered by the primary insurance.

Sec. 3. Except as provided by section 4 of this chapter, if the conditions of sec-

---

**1.** Commercial Motor Freight, Inc. was the corporate predecessor of the commercial trucking firm now called Commercial Lovelace Motor Freight, Inc.

tion 1 of this chapter are met, and if at the time of the loss the motor vehicle involved in the loss was operated by any person other than the person (or that person's agent or employee) engaged in a business as provided by section 1(2) of this chapter, the insurance afforded by the policy issued to the person engaged in that business shall not be the primary insurance and shall, within the limits of that policy, only cover that part of the loss not covered by all other insurance available to the operator.

Sec. 4. The requirements of sections 2 and 3 of this chapter apply unless a written agreement to the contrary is signed by:

> (1) all insurers who have policies applicable to a loss as provided in section 1 of this chapter; and

> (2) all named insureds under policies applicable to a loss as provided in section 1 of this chapter.

Ind.Code §§ 27–8–9–1 through 4 (1982).[2]

The trial judge reasoned that both § 1(1) and § 1(2) were satisfied in this case because there were "two ... valid, collectible policies affording motor vehicle liability insurance" and because one of the policies, Commercial's, covered a "named insured engaged in the business of ... leasing ... motor vehicles." It rejected as "not supported by the record" Federal's argument that Flanigan Tires was also, for the purposes of the statute, engaged in the business of leasing vehicles. Since Flanigan was operating a Flanigan Tires-owned truck at the time of the accident, the district court concluded that § 3 of the statute applied and that pursuant to the statute Flanigan's insurance—the Travelers policy and the Federal policy as excess coverage—should be the primary insurance in this case.

Travelers and Federal argue on appeal that the Indiana statute does not apply to the factual situation before us. Specifically they assert that the trial judge erred in concluding that Flanigan Tires was not in the business of leasing motor vehicles. The significance of their argument lies in their further contention that if two named insureds are in the business of leasing motor vehicles, the statute by its terms no longer applies.

We agree with the trial judge that the statute controls here, and we also agree that it requires that Flanigan Tires' insurers, Travelers and Federal, provide primary insurance coverage. We reach this result, however, through a different application of the statute to the undisputed facts. *See Pfeil v. Rogers,* 757 F.2d 850, 866 (7th Cir.1985) (appellate court may affirm grant of summary judgment if order is correct but reasons given by trial judge are erroneous).

*APPLICATION OF THE STATUTE.* We have been unable to find any legislative history or case law discussing these statutory provisions, which were in effect from 1980 to 1983. Thus we apply them here with an eye to their plain language and to the probable intent of the Indiana legislature. The first section of the statute specifies those situations in which the later sections should be applied: when two or more insurance policies provide motor vehicle liability insurance covering an accident, § 27–8–9–1(1), and one of these policies affords coverage to a named insured engaged, *inter alia,* in the business of leasing motor vehicles, § 27–8–9–1(2).

All three policies issued by the parties to this suit provide coverage for the underlying accident. The Travelers policy states: "We will pay all sums the insured legally must pay as damages because of bodily

**2.** These sections have been repealed and replaced by a new set of provisions, applicable to policies issued after August 31, 1983. P.L. No. 261, §§ 1–5, 1983 Ind.Acts.1695, 1695–96. The new scheme, codified at Ind.Code §§ 27–8–9–5 through 27–8–9–9 (Supp.1983), also distinguishes between insureds in the business of "selling, leasing, repairing, servicing, delivering,

..." etc., motor vehicles and those that are not. The general rule is that a vehicle owner's policy is primary when the vehicle is being operated by another with the owner's permission. The exception is when the owner is in one of the enumerated businesses, in which case the permittee's insurance is primary.

injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto." Garage Policy # 650–644–E232–5–IND–81, Business Auto Endorsement, at 1. There has been no suggestion that the truck Mr. Flanigan was driving is not a "covered auto." The Federal policy provides that it will pay the insured's "ultimate net loss," or the excess over the limit of underlying insurance, that the "insured shall become obligated to pay by reason of liability imposed upon the insured by law...." Commercial Umbrella Liability Policy # 7927–19–85, at 1. Finally, the Transport policy covers "all sums which the insured shall become legally obligated to pay as damages arising out of the occupation of the named insured ... as a result of [b]odily injury, sickness, disease, or death of persons...." Occupational Comprehensive Liability and Comprehensive Physical Damage Policy, # GL–664–75–1, at 2. Commercial's occupation is listed on the policy as that of "Truckman-Common Carrier." *Id.* at 1. Both the Travelers and Transport policies contain "other insurance" clauses. *See* Travelers Policy, Truckers' Endorsement, at 4 ("This policy's liability coverage is excess over any other collectible insurance for any covered auto while hired or borrowed from you by another trucker."); Transport Policy, at 4 ("If there is other insurance ... against an occurrence covered by this policy, such insurance as is afforded by this policy shall be excess insurance...."). This does not affect the applicability of the statute, however, because the common law of Indiana is that "[w]here 'other insur-

ance' clauses are found to be mutually repugnant they should be disregarded *in toto.*" *Indiana Insurance Co. v. Federated Mutual Insurance Co.,* 415 N.E.2d 80, 86 (Ind.App.1981).[3]

The larger question involves § 27–8–9–1(2), which requires that one of the applicable policies be issued to a named insured in the business of leasing motor vehicles. The trial judge determined that Commercial was engaged in such a business and that Flanigan Tires was not. The parties confine their argument before this court to Flanigan Tires' status as a lessor. Before the trial court, however, Transport had argued that only Flanigan Tires was in the business of truck leasing and that *Commercial* was *not.* Defendant, Third-Party Plaintiff Transport Insurance Company's Response to Federal Insurance Company's Motion for Summary Judgment, at 10–14. We think that this is the better conclusion to draw from the facts before us and the language of the statute. We may affirm a summary judgment on any ground that finds support in the record, *Box v. A & P Tea Co.,* 772 F.2d 1372, 1376 (7th Cir.1985); *United States v. Winthrop Towers,* 628 F.2d 1028, 1037 (7th Cir.1980), although it is important that the ground have been presented to the trial court so that the non-moving party might have the opportunity to contest the issue and make a record on it. *Box,* 772 F.2d at 1376; *Charbonnages de France v. Smith,* 597 F.2d 406, 416 n. 9 (4th Cir.1979). The argument in question was presented .to the trial court[4] and we adopt it now.

---

**3.** The Travelers policy also contains a provision stating that when two policies purport to offer only "excess" coverage, Travelers will pay only a *pro rata* share of the exposure. Travelers Policy at 4. This, too, is irrelevant to the application of § 27–8–9–1(1) because this has been modified by an endorsement that makes the terms of Indiana Code §§ 27–8–9–1 through 3 part of the policy. *Id.,* Changes in Policy-Indiana, at 1. Thus we need not address whether and how the statutory scheme may be modified by contract.

**4.** The whole posture of the appeal here in regard to the proceedings before the trial court is quite unusual. The parties have literally traded

arguments on the subject of what business Mr. Flanigan was engaged in. Before the trial court Travelers and Federal contended that Commercial was in the leasing business and Flanigan Tires was not. (Transport, as we have noted took the opposite view.) The trial court adopted the Travelers-Federal view—unfortunately for these parties because this meant that their policies were primary.

On appeal, Travelers and Federal argue that *both* Flanigan Tires and Commercial were in the leasing business, which renders the statute inapplicable. Transport asserts that Commercial was in the leasing business and that Flanigan was not (a complete flip-flop)—or in the

■ It is difficult to see how Commercial could be in the business of leasing motor vehicles when the only evidence in the record shows that Commercial is an ICC-certified common carrier that would enter into trip leases as a *lessee*. Commercial would lease other peoples' trucks in furtherance of the business in which it was engaged: hauling goods under contract. Trip leases were a means to an end. A lessee pays a lessor for the use of a vehicle, and paying money for a service cannot be one's business. All of the rest of the "businesses" listed in the statute are services involving motor vehicles for which one is paid: selling, repairing, servicing, delivering, testing, road testing, parking, storing. It is an oddity of semantics that the same verb, "lease," is used to refer to the activities of both lessor and lessee. It is clear to us, however, that "leasing" in § 27–8–9–1(2) means "acting as a lessor."

Following this line of reasoning, we believe that Flanigan Tires was, for the purposes of the statute, engaged in the business of leasing motor vehicles. Mr. Flanigan testified that he would trip lease his tractor-trailer two or three times a month and that he had done so for a period of at least three years prior to the Spriggs accident. This adds up to approximately 100 trip leases. Mr. Flanigan received compensation for these trips. He certainly planned for these trip leases because his insurance policy contains a "Truckers Endorsement," which modifies the terms of his policy "[f]or any operations ... engage[d] in as a trucker." Travelers Policy, Truckers Endorsement, at 2. In the policy, "trucker" is defined as "any person or organization engaged in the business of transporting property for hire." *Id.*

■ Nothing in the statute requires that one be *exclusively* engaged in one of the named businesses. It only requires that an applicable insurance policy cover a named insured engaged in that business. Travelers has contended all along that the Truck-

ers Endorsement modifies its policy with respect to liability for the Spriggs accident. *See, e.g.,* Appellant's Brief at 16–17. We believe that the undisputed evidence clearly supports the conclusion that Flanigan was, for purposes of the statute, engaged in the business of leasing motor vehicles.

■ If the above is true, the Indiana statute does apply and determines primary insurance coverage here. Since Mr. Flanigan was driving the truck at the time of the accident, § 27–8–9–2 is the operative section: Travelers and Federal therefore provide primary insurance coverage and Transport provides excess coverage. We reach this result by applying the plain language of the statute, but such a result also comports with the apparent intent of this statutory scheme: assessing primary coverage for a certain subset of accidents to the insurance company of whoever is operating the motor vehicle at the time an accident occurs.

When two or more policies cover the same automobile accident and one of those policies has been issued to an insured in one of the automotive-related businesses listed in the statute, it may frequently be the case that one of the policies insures the actual driver of the vehicle and the other a party less directly involved in the accident. *See* W. Prosser, Law of Torts, § 73 (1971) ("[T]he advent of the automobile has been responsible for a number of ... extensions of the principle of vicarious liability."). These fact situations arise frequently; they include *inter alia* vehicle leases, new car tryouts, and "loaner" cars from garages. *See* Recent Developments, *Resolution of Conflicting "Other Insurance" Clauses: New Developments in Indiana,* 46 Ind.L.J. 270, 272–73 (1970) (collecting cases). If there were no statute, the common law of Indiana would apply. One would look first to the language of the applicable insurance policies to sort out primary coverage, *see, e.g., American Underwriters', Inc. v. Auto-Owners Mutual Insurance Co.,* 454

alternative that the statute still applies when both insureds are in the leasing business. In short, any of the possible combinations are sub-

ject to the objection that they either were not raised below or renewed here.

N.E.2d 876 (Ind.App.1983). If (as here) both purported to supply only excess coverage, the clauses so providing would be stricken as "mutually repugnant," both policies would be considered primary and both insurers would share the loss in proportion to the limits of their respective policies. *Indiana Insurance Co. v. Federated Mutual Insurance Co.*, 415 N.E.2d 80, 88 (Ind. App.1981). The Indiana statute alters this common law rule in those situations in which one of the enumerated businesses is involved in the underlying accident: then, these businesses' insurers will provide primary coverage when a person in the insured business (or his employee) is actually operating the vehicle, § 27-8-9-2, as opposed to exercising some arguably more remote form of control.

Mr. Flanigan, whose company engaged in one of the prescribed businesses, was driving at the time of the accident. It was he that turned the truck in front of the Spriggs' automobile. Commercial's responsibility lay in the fact that it, as lessee, "controlled" the trip and that, as an ICC-certificated carrier, it was ultimately responsible for a trip taking place under its operating permit and in furtherance of its interstate trucking business. Thus the statute requires that Flanigan's insurers, Travelers and Federal, provide primary coverage.

*ROLE OF FEDERAL LAW.* Travelers and Federal also assert that the Transport policy is primary as a matter of federal law. They argue that since Commercial is the holder of an ICC permit, it is responsible for all injuries arising out of the operation of motor vehicles under these permits and that Transport, which knew that it was undertaking to insure a firm with federally-imposed responsibilities, should be primarily liable.

In support of its first argument, Travelers and Federal cite several sections of the Interstate Commerce Act, including 49 U.S.C. § 10927, which requires that all ICC-certificated carriers file with the ICC an insurance policy or other form of surety "sufficient to pay ... for each final judgment against the carrier for bodily injury to, or death of, an individual resulting from the negligent operation, maintenance, or use of motor vehicles" under the permit, and 49 U.S.C. § 11107(a)(3), which requires "a motor carrier ... that uses motor vehicles not owned by it to transport property under an arrangement with another party ... to ... obtain liability ... insurance...." Commercial, in conformity with Federal requirement, had acquired such insurance—the Transport policy here in question.

The ICC regulations also prescribe an endorsement for motor carrier policies providing that "[w]ithin the limits of liability ... it is further understood and agreed that no condition, provision, stipulation, or limitation contained in this policy ... shall relieve the [insurance] Company from liability hereunder...." ICC Form B.M.C. 90. The Transport policy did not contain a printed endorsement to this effect,[5] but it has been held that this endorsement may be read into a policy certified to the ICC as a matter of law. *Hagans v. Glens Falls Insurance Co.*, 465 F.2d 1249, 1252 (10th Cir.1972). Travelers and Federal also call our attention to 49 C.F.R. § 1057.12(d)(1), which requires permit holders that enter into a lease agreement to "assume complete responsibility for the operation of the equipment for the duration of the lease." Relying on these provisions, they contend that by virtue of the federal "control and responsibility" and financial responsibility regulations covering ICC permittees, a permittee's insurance is primary as a matter of law. This argument has met with success in several cases, *see, e.g., Argonaut*

---

**5.** The Transport policy did contain a provision that arguably substitutes for B.M.C. 90. It states:

When this policy is certified as proof of financial responsibility under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law only to the extent of the coverage and limits of liability required by such laws. Transport Policy, at IV(1).

*Insurance Co. v. National Indemnity Co.,* 435 F.2d 718 (10th Cir.1971); *Hagans v. Glens Falls Insurance Co.,* 465 F.2d 1249 (10th Cir.1972); *Aetna Casualty and Surety Co. v. Arkin,* 365 F.Supp. 813 (N.D.Ill. 1973). It has, however, been more frequently rejected. *See, e.g., Transport Indemnity Co. v. Paxton National Insurance Co.,* 657 F.2d 657 (5th Cir.1981), *cert. denied,* 455 U.S. 982, 102 S.Ct. 1490, 71 L.Ed.2d 692 (1982); *Carolina Casualty Insurance Co. v. Insurance Co. of North America,* 595 F.2d 128 (3d Cir.1979); *Carolina Casualty Insurance Co. v. Underwriters Insurance Co.,* 569 F.2d 304 (5th Cir.1978); *Carolina Casualty Insurance Co. v. Transport Indemnity Co.,* 533 F.Supp. 22 (D.S.C.1981), *aff'd,* 676 F.2d 690 (4th Cir.), *cert. denied,* 459 U.S. 829, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982); *Ryder Truck Lines, Inc. v. Carolina Casualty Insurance Co.,* 270 Ind. 315, 385 N.E.2d 449 (1979); *Truck Insurance Exchange v. Transport Indemnity Co.,* 180 Mont. 419, 591 P.2d 188 (1979); *Great West Casualty Co. v. Mallinger Truck Line, Inc.,* 640 S.W.2d 479 (Mo.App.1982). We join the majority in rejecting the contention. The purpose of the federal statute and regulations is to ensure that an ICC carrier has independent financial responsibility to pay for losses sustained by the general public arising out of its trucking operations. However, once it is clear that there are sufficient funds available to safeguard the public, the inquiry changes: "[t]he pertinent question is whether the federal policy of assuring compensation for loss to the public prevents courts from examining the manner in which private agreements *or state laws* would otherwise allocate the ultimate financial burden of the injury." *Insurance Co. of North America,* 595 F.2d at 138 (emphasis added). We agree with the majority view that "I.C.C. public policy factors are frequently determinative where protection of a member of the public is at stake, but those factors cannot be invoked by another insurance company which contracted to insure a specific risk and which needs no equivalent protection." *Underwriters,* 569 F.2d at 313. Thus, we hold that ICC policy does not alter the application of the Indiana statute, which places primary coverage on Travelers and Federal. We would emphasize, however, that were it not for the Indiana statute, the policy provisions as to coverage would be controlling.[6]

The decision of the district court is

AFFIRMED.

---

**6.** All three insurance companies devote large portions of their briefs to issues of indemnity, express and implied. Because Ind.Code §§ 27–8–9–1 to 4 answers the question before us, we do not find the law of indemnity relevant. Moreover, we are not convinced that it would be relevant even in the absence of a statute: Indiana case law would dictate that the policy provisions control. *See supra.* In a case in which at least two insurance policies cover an accident, the question whose insurance is primary is only of real importance to the insurers. Each has contracted to insure against a certain risk, the parameters of which appear in the coverage provisions of its policy. The insured will recover from one or the other and thus is less concerned about who writes the check.

Transport argued that Flanigan Tires undertook to indemnify Commercial in the underlying trip lease agreement. This would apparently not affect primary coverage because Travelers' policy disclaims any liability assumed by contract. Transport also argued that Travelers is primarily responsible under a theory of implied indemnity. This theory would not shift the insurers' contractual responsibility although arguably the insurer found to provide primary coverage would be free to seek indemnity from an underlying party (and hence its insurer). *See Colonial Refrigerated Transportation, Inc. v. Worsham,* 705 F.2d 821 (6th Cir.1983).